# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

KRISTOPHER MONTE PRINCE     )
          )
     Petitioner,     )
          )
     vs.     )   Case No.   14-0134-CV-W-HFS-P
          )
MICHAEL BOWERSOX.,     )
          )
     Respondent.     )

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and sentences for second degree felony murder, armed criminal action, and unlawful use of a firearm, which were entered in the Circuit Court of Boone County, Missouri.

Petitioner raises nine (9) grounds for relief: (1 and 2) his sentences violate the Double Jeopardy Clause's prohibition against cumulative sentences; (3) the trial court erred in admitting audio recordings of petitioner's jail telephone calls; (4) the trial court abused its discretion in overruling petitioner's objection to the state's closing argument; (5) the trial court plainly erred in admitting testimony and evidence of petitioner's silence regarding his involvement with the murder in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); (6) the trial court erred in denying petitioner's motion for a continuance; (7) he received ineffective assistance of trial counsel because counsel failed to investigate evidence related to petitioner's mental health for the purpose of mitigation during the penalty phase; (8) he received ineffective assistance of trial counsel because counsel failed to request a change of judge based on the trial court's familiarity with

petitioner's grandfather; and (9) petitioner received ineffective assistance of trial counsel because counsel failed to request a no-adverse-inference instruction during the penalty phase and because the post-conviction motion court erred in not granting petitioner a change of judge and in adopting the state's proposed findings and conclusions verbatim. Respondent contends that all grounds are without merit, and additionally contends that Ground 5 is procedurally barred and that part of Ground 9 is not cognizable for federal habeas relief.

## FACTUAL BACKGROUND

In affirming petitioner's convictions and sentences, the Missouri Court of Appeals, Western District, set forth the following facts:

On April 12, 2007, [petitioner] and his cousin, Lorenzo Ladiner, bought an assault rifle for the purpose of robbing a local drug dealer, Larry McBride. They stored the rifle at Ladiner's home. Later that same day, Ladiner was pulled over and arrested on an outstanding warrant. The next day, when [petitioner] went to post bail for Ladiner, [petitioner] was arrested on an outstanding warrant. From April 13 to 18, 2007, [petitioner] remained in custody at the Boone County jail. During his confinement, [petitioner] made several phone calls to Ladiner in which they discussed their plans to assault and rob McBride.

While [petitioner] was in custody, Ladiner fired shots at McBride's vehicle. When [petitioner] was released, he went to Ladiner's house. McBride pulled up to the house with Tedarrian Robinson and Carlos Dudley. McBride accused Ladiner of shooting at his house which led to a heated verbal exchange. [Petitioner] attempted to open McBride's door, and McBride drove off.

[Petitioner] and Ladiner ran inside Ladiner's house. [Petitioner] grabbed the assault rifle and Ladiner grabbed the car keys to chase after McBride. When they caught up with McBride, [petitioner] leaned out the passenger window and fired at least five shots at McBride's vehicle. One bullet pierced the trunk of McBride's vehicle, traveled through the rear seat to the front passenger headrest, and struck Robinson in the neck. [Petitioner] and Ladiner returned to Ladiner's house and hid the rifle in the attic. McBride drove toward the hospital. Dudley called the police and reported that [petitioner] was the shooter. The police pulled McBride over and took Robinson to the hospital where he was pronounced dead.

Police responded to Ladiner's house and arrested both Ladiner and

2

[petitioner].  [Petitioner] was charged with murder in the second degree, section 565.021[1] (felony murder), unlawful use of a weapon by shooting a firearm from a motor vehicle, section 571.030.1(9), and armed criminal action, section 571.015[2]. Prior to trial, [petitioner] filed a motion for continuance and several motions to dismiss based on double jeopardy and statutory grounds, all of which were denied by the trial court.   A jury found [petitioner] guilty on all three counts.   [Petitioner] was sentenced to consecutive sentences of thirty years for felony murder, fifteen years for unlawful use of [a] weapon, and five years for armed criminal action.

[1]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.
[2][Petitioner] was originally charged with an additional count of armed criminal action but the State later dropped the charge.

Respondent's Exhibit E, pp. 915-916.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983).   Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984).   It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous.   28 U.S.C. § 2254(e)(1).[1]   Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## <u>GROUND 1</u>

In Ground 1, petitioner asserts that the trial court erred in sentencing petitioner for both

_____

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

second-degree murder and unlawful use of a weapon because the sentences violate Petitioner's

protection against double jeopardy. Doc. No. 1, p. 5. Petitioner claims that his convictions for

felony murder and "unlawful use of a weapon resulting in death" violate the ban against

cumulative punishment. Doc. No. 1, p. 5. The Missouri Court of Appeals considered Ground 1

and ruled on the merits:

> [Petitioner] argues that the trial court erred in sentencing him for both felony murder and unlawful use of a weapon because the cumulative sentences imposed for these convictions violated his right to be free from double jeopardy and violated section 556.041(3), as he was effectively convicted of a general crime and a specific crime based on the same conduct. The Double Jeopardy Clause of the Fifth Amendment prevents a defendant from being subjected to multiple punishments for the same offense. *Peiffer v. State*, 88 S.W.3d 439, 442 (Mo. banc 2002). "Double jeopardy analysis regarding multiple punishments is ... limited to determining whether cumulative punishments were intended by the legislature." *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992) (citing *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). When the legislature specifically authorizes cumulative punishments under two statutes that proscribe the same conduct, cumulative punishments may be imposed against the defendant without violating the Double Jeopardy Clause. *Id*. Thus, in resolving the question of double jeopardy where cumulative punishment is claimed, legislative intent is paramount.

> Section 556.041(3) prohibits the conviction of more than one offense if "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." (Emphasis added.) [Petitioner] was convicted of felony murder, the commission of any felony that results in death. The felony that served as the predicate offense for the felony murder conviction was the charge of unlawful use of a weapon by shooting a firearm from a motor vehicle, a violation of section 517.030.1(9). [Petitioner] contends that he was also convicted of the enhanced charge of unlawful use of a weapon by shooting a firearm from a motor vehicle resulting in death. This enhanced charge is described in section 571.030.7, which provides that a violation of section 571.030.1(9) is a class B felony "except that if the violation of subdivision (9) of subsection 1 ... results in injury or death to another person, it is a class A felony." [Petitioner] thus takes the position that he was convicted and sentenced twice for the same crime—the commission of a felony resulting in death—with one offense (felony murder) designating his conduct generally and one offense (enhanced violation of section 571.030.1(9)) designating his conduct specifically. As a result, [petitioner] contends his cumulative sentences for both

4

convictions violate section 556.041(3). This point is without merit as [petitioner]'s claim is predicated on a false premise.

The State initially charged [petitioner] with a class A felony—the enhanced violation of section 571.030.1(9) pursuant to section 571.030.7. However, prior to trial, the State filed a second amended information in which the enhanced unlawful use of a weapon charge was reduced to the unenhanced class B felony of unlawful use of a weapon pursuant to section 571.030.1(9). The jury was instructed on the class B felony of unlawful use of a weapon which, though requiring proof of [petitioner]'s discharge of a firearm from a motor vehicle, did not require proof that the discharge resulted in the death of another. [Petitioner] was convicted of, and sentence was imposed on, the class B felony of unlawful use of a weapon. Despite [petitioner]'s contention to the contrary, [petitioner] was not convicted of, nor sentenced for, the enhanced version of section 571.030.1(9). He was, therefore, not convicted of two crimes possessing as a required element a "resulting death." Because [petitioner] has posited a factual scenario that did not occur, we need not address the substantive issue posed by [petitioner]'s point relied on.[3]

> [3][Petitioner] has not asked us to review whether his convictions for felony murder and for the unenhanced version of unlawful use of a weapon in violation of section 571.030.1(9) violate section 556.041(3), though we note that section 565.021.2 expresses the legislature's intention that "the punishment for second degree murder shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter."

Resp. Ex. E, pages 3-5.

"The Supreme Court repeatedly has held, in the double-jeopardy context, that whether a state legislature intends cumulative punishment for two offenses is an issue of state law, over which state courts have final authority." *Dodge v. Robinson*, 625 F.3d 1014, 1018 (8th Cir. 2010). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Missouri legislature plainly states that it intends second-degree murder to be cumulatively punished for the underlying crime. The second-degree murder (felony murder) statute states, "the punishment for second

5

degree murder shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter. Section 565.021.2 RSMo (2000).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). Petitioner has failed to show that the state courts' interpretation of the state legislature's intention in regard to cumulative punishment resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* U.S.C. § 2254(d)(1) and (2); Mo. Rev. Stat. § 558.021(1)(3). As such, Ground 1 will be denied.

## **GROUND 2**

In Ground 2, petitioner claims that his sentences for unlawful use of a weapon and armed criminal action violate the Double Jeopardy Clause's prohibition against cumulative punishment. Doc. No. 1, p. 6. The Missouri Court of Appeals considered Ground 2 and ruled on the merits:

> As previously noted, the Fifth Amendment's Double Jeopardy Clause protects a defendant from multiple punishments for the same offense. As this protection has been construed to turn on whether cumulative punishments were intended by the legislature, our analysis of this point must turn on construction of section 571.015.
>
> The armed criminal action statute, section 571.015, provides:
> 1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action....
> ....

6

4. The provisions of this section shall not apply to the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo.

[Petitioner] concedes that section 571.030.1(9) of which he was convicted for discharging a firearm at or from a motor vehicle is not expressly included in section 571.015.4 as an offense for which cumulative punishment is prohibited by the legislature. Nonetheless, [petitioner] suggests we should construe section 571.015.4 to include section 571.030.1(9) within its scope because section 571.030.1(9) was enacted nearly twenty years after the legislature enacted section 517.015 and the legislature has simply neglected to amend section 571.015.4 from time to time as necessary to keep pace with changes in the specific conduct now defined to constitute an unlawful use of weapons charge. We do not agree.

The confusion with respect to what is or is not meant by the legislature to be excluded from cumulative punishment along with a conviction for armed criminal action under section 571.015 is due in large measure to the fact the statutes enumerated in section 571.015.4 (which was enacted in 1977) were renumbered/transferred in 1978 and were then repealed in 1981. *See State ex rel. Green v. Moore*, 131 S.W.3d 803, 807-08 (Mo. banc 2004). Notwithstanding, Section 571.015.4 has never been amended to keep pace with the transfer, repeal, revision, and recodification of the enumerated offenses for which the legislature originally expressed an intent to prohibit cumulative punishment. The challenge, therefore, has been to determine legislative intent given the antiquated references in section 571.015.4. Universally, and notwithstanding the 1981 repeal of the statutes enumerated in section 517.015.4, our courts have opted to equate the substantive scope of revised and recodified statutes with the substantive scope of the statutes originally enumerated in section 571.015.4. This is consistent with the fact that in 1982, the year after the 1981 repeal of the transferred sections enumerated in section 517.015.4, the legislature nonetheless enacted section 571.017 which provides:

Nothing contained in any other provision of law, *except as provided in subsection 4 of section 571.015*, shall prevent imposition of sentences for both armed criminal action and the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

(Emphasis added.) Thus, albeit with less than stellar attention to fine details, the legislature's enactment of section 571.017 in 1982 appears clearly to have restated its continuing intention to treat the offenses described in section 571.015.4 as the only felony offenses which cannot serve as a predicate for an armed criminal action charge and as the *only* felony offenses for which cumulative punishment along with an armed criminal action conviction is not permitted.

7

Our charge, therefore, is to assess whether section 571.030.1(9), of which [petitioner] was convicted, equates with any of the now repealed statutory offenses enumerated in section 571.015.4. We find it does not. Section 564.610 is the enumerated section [petitioner] suggests should be equated with section 571.030.1(9). Section 564.610 was transferred in 1978 to section 571.115. Under section 564.610 (then section 571.115) prior to its repeal in 1981, the statutes prohibited the following offenses: carrying a concealed weapon; exhibiting a weapon in an angry or threatening manner; possession of a weapon while intoxicated; possessing a firearm in a church, school, election precinct on election day, court or other public assemblage; and selling or delivering a weapon to a minor. Section 571.030 revised and recodified each of these offenses as follows: section 571.030.1(1) (carrying a concealed weapon); section 571.030.1(4) (exhibiting a weapon in an angry or threatening manner); section 571.030.1(5) (possessing or discharging a firearm while intoxicated); section 571.030.1(8) (possessing a firearm in a church, election precinct on election day, or in a government building); and section 571.030.1(10) (possessing a firearm in a school).

As [petitioner] accurately notes, our courts have had no difficulty concluding that sections 571.030.1(1), (4), (5), (8), or (10) cannot serve as the predicate offense for a charge of armed criminal action under section 571.015, and cannot, therefore, be cumulatively punished with an armed criminal action conviction. In *Green*, our Supreme Court held that a charge for exhibiting a lethal weapon in an angry or threatening manner under section 571.030.1(4) could not serve as the predicate offense for an armed criminal action charge under section 571.015. 131 S.W.3d at 807–08. This same result was reached in *Ivy v. State*, 81 S.W.3d 199, 206–08 (Mo.App. W.D.2002), and in *State v. King*, 748 S.W.2d 47, 50 (Mo.App. E.D.1988).

In contrast, in *State v. Couts*, 133 S.W.3d 52, 53 (Mo. banc 2004), our Supreme Court concluded that use of a weapon by shooting into a dwelling under section 571.010.1(3) was "not one of the types of unlawful use of a weapon listed in section 571.015.4." *Id*. at 53. In *Couts*, the section 571.015.4 violation served as the basis for *Couts*'s charge and conviction for second degree murder. In turn, the second degree murder charge served as the predicate for the armed criminal action charge and conviction. *Id*. Because the offense described in section 571.010.1(3) had never been included within the offenses described in the enumerated statutes in section 571.015.4, the Supreme Court had no difficulty concluding the "neither section 571.015.4 nor general double jeopardy principles preclude defendant's conviction of armed criminal action predicated on his second-degree murder conviction." *Id*.

8

[Petitioner] argues that *Couts* is distinguishable from his case because the Supreme Court noted that the charge of unlawful use of a weapon by shooting into a dwelling was encompassed in an already existing statute—section 562.070—at the time section 571.015.4 was enacted. In contrast, the offense of unlawful use of a weapon by shooting from a motor vehicle did not exist until section 571.030.1(9) was enacted in 1995, eighteen years after section 571.015 was enacted. Prince suggests that the legislature's intent with respect to incorporation of section 571.030.1(9) into the scope of section 571.015.4 is thus unclear. We disagree.

Though the Supreme Court in *Couts* did note that section 571.030.1(3) was encompassed in an existing offense when section 571.015 was enacted, suggesting the legislature's failure to include that offense within the ambit of section 571.015.4 was purposeful, this observation merely added additional support for the Court's conclusion that legislature did not intend to prohibit cumulative punishment for armed criminal action and felony murder predicated on a charge of unlawful use of a weapon by shooting into a dwelling pursuant to the clear language of section 517.015. The Court noted:

> Subsection 1 of section 571.015 specifically states the legislature's intent that a person can be convicted of armed criminal action for commission of any felony through the use of a dangerous weapon other than those specifically listed in section 571.015.4.... [B]ecause section 571.015.4 does not enjoin cumulative punishments for armed criminal action and this particular form of unlawful use of a weapon, [the defendant's] armed criminal action conviction does not violate either section 571.015.4 or general double jeopardy principles.

*Couts*, 133 S.W.3d at 56.[5]

The circumstances before us are not distinguishable from the central holding in *Couts*. [Petitioner] concedes that section 571.030.1(9) is not included in the list of exceptions enumerated in section 571.030.1(4). There is no legal support offered by [petitioner] for the proposition that we can find ambiguity in section 571.015 merely because the offense described in section 571.030.1(9) did not exist at the time section 571.015 was enacted. The legislature is presumed to know the state of the law when it enacts a statute. *State v. Rousseau*, 34 S.W.3d 254, 261 (Mo.App. W.D.2000). Further, the legislature is presumed to intend what the statute says, and we give effect to the words based on their plain and ordinary meaning. *Johnson v. Mo. Dep't of Corr.*, 166 S.W.3d 110, 111 (Mo.App. W.D.2005). If anything, the fact that the legislature did not amend section 571.015.4 when it enacted section 571.030.1(9) provides as strong an indication of legislative intent as the reverse scenario involved in *Couts* where the specific unlawful use of a weapon offense already existed at the time section 571.015 was

9

enacted. In either case, the legislature's failure to act though presumed to know the state of the law suggests legislative intent not to include additional unlawful use of a weapon offenses within the scope of section 571.015.4 beyond those expressly therein enumerated. *Cook v. Newman*, 142 S.W.3d 880, 888 (Mo.App. W.D.2004).

[Petitioner] essentially suggests that this court should act as the legislature to create another exception in section 571.015(4). We decline to do so. Though it might be less confusing if section 571.015 barred all unlawful use of weapon offenses as predicates for armed criminal action, the Supreme Court has correctly noted this is a decision for the legislature. *Couts*, 133 S.W.3d at 56.

[5]The Supreme Court further noted that any *dicta* in the decisions in *Ivy* or *King* suggesting that all types of unlawful use of a weapon offenses found in section 571.030 are barred as predicated for armed criminal action should be ignored. *Couts*, 133 S.W.3d at 56 n.6.

Resp. Ex. E, pages 6-12.

This determination by the Missouri Court of Appeals is reasonable and entitled to deference under §2254(d). As previously discussed in ruling on Ground 1, federal courts consistently find that whether a state legislature intends cumulative punishment for two offenses is an issue of state law, over which state courts have final authority. *Dodge*, 625 F.3d at 1018. This Court is bound by the state court's determination that the state legislature intended cumulative punishment for petitioner's armed criminal action and unlawful use of a weapon sentences. Therefore, federal habeas relief on Ground 2 will be denied.

## GROUND 3

In Ground 3, petitioner claims that the trial court abused its discretion in admitting into evidence the audio recordings of petitioner's prison phone calls with his cousin and co-defendant, Lorenzo Ladiner. Doc. No. 1, p. 8. Petitioner objected to the recordings being admitted into evidence on the basis that the recordings were inaudible and that the recordings were improper

bolstering because Ladiner already had testified to their contents. Petitioner claims the court improperly overruled the objection.

The Missouri Court of Appeals reviewed the recordings in order to rule on the claim that the recordings were inaudible. Resp. Ex. E, p. 14. The court found the claim meritless. Resp. Ex. E, p. 14. The court also reasoned that, even if the recordings had been partially inaudible, that would not render the recordings untrustworthy and that the determination is within the court's discretion. Resp. Ex. E, p. 14; *See State v. Taylor*, 831 S.W.2d 266, 271 (Mo.App. E.D. 1992); *See United States v. Huff*, 959 F. 2d 731, 737 (8th Cir. 1992) (the decision to admit partially inaudible audio tapes is a matter within the sound discretion of the trial court).

The Missouri Court of Appeals found also that petitioner's claim that the recordings improperly bolstered Ladiner's testimony was meritless. In considering the claim, the court concluded:

> Improper bolstering occurs when out-of-court statements are offered solely to duplicate or corroborate trial testimony. *Holmquest*, 243 S.W.3d at 449. Our review of the record indicates that is not the case here. Although Ladiner testified about the contents of his phone discussions with [petitioner], the playing of the recordings was not duplicative. Ladiner's testimony explained context, references, and identified who was talking. This was not the same testimony in a different form as prohibited by our holding *Holmquest*.
>
> [Petitioner] relies on *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), and *State v. Cole*, 867 S.W.2d 685 (Mo.App. E.D.1993). However, both are distinguishable. In *Seever*, the State played a video statement of a child victim and then had the victim testify to all the elements of the case. 733 S.W.2d at 439–40. The testimony was duplicative of the victim's statements in the video. *Id*. at 441.
>
> In *Cole*, the witness gave a taped statement of details of a shooting. 867 S.W.2d at 686. The witness testified at trial. *Id*. On cross-examination, the defense pointed out four specific inconsistencies between her trial testimony and her recorded statement and played those portions for the jury. *Id*. Then, the State played the entire statement over objection. *Id*. The Eastern District held that

playing the entire tape was improper bolstering because it substantially repeated the in-court testimony of the witness. *Id.*

In the present case, Ladiner testified only generally about his discussions with [petitioner] prior to the recordings being played. As the recordings were played, they were periodically stopped for clarification and explanation about some of the discussion. Often this was necessary to explain the use of slang phrases and unfamiliar terminology. The recordings were not improperly duplicative of Ladiner's testimony.

The trial court did not abuse its discretion in admitting the audio recordings.

Resp. Ex, E, pages 14-15.

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), *cert. denied*, 549 U.S. 835 (2006); *see also Bell-Bey v. Roper*, 499 F.3d 752, 759 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2426 (2008). "The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), *cert. denied sub nom. Skillicorn v. Roper*, 552 U.S. 923 (2007).

The state appellate court's findings are presumed to be correct under 28 U.S.C. § 2254(e)(1). A federal court is bound by a state court's interpretation of state law in federal habeas corpus proceedings unless petitioner's conviction violates the United States Constitution or federal law. *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991). *Sweet v. Delo*, 125 F.3d 1144, 1153 (8th Cir. 1997), *cert. denied sub nom. Sweet v. Bowersox*, 523 U.S. 1010 (1998). Further, it is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions. 28 U.S.C.A. § 2254(a); *Wilson v. Corcoran* 131 S. Ct. 13, 16 (2010). As the trial court's admission of the evidence did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* U.S.C. § 2254(d)(1) and (2); Mo. Rev. Stat. § 558.021(1)(3), Ground 3 will be denied.

## GROUND 4

In Ground 4, petitioner claims the trial court abused its discretion in overruling his objection to the state's closing argument. Doc. No. 1, p. 9. Petitioner claims the state's statement that petitioner instructed Ladiner to "ice that dog" misstated the evidence and prejudiced petitioner by portraying him as a ruthless killer. Doc. No. 1, p. 9. The relevant statements are as follows:

> Please go ahead and take those tapes back there. And I think – if you want to play it over and over again, you don't even need to, because the defendant is already talking about slapping [the victim], robbing him, getting in his pockets. But I think if you want to go back there and listen to these – this tape again, you're going to hear, you're going to hear the defendant say, "I don't care. Ice that dog, Ice him."

Resp. Ex. A, page 1405. The trial court overruled petitioner's objection and later instructed the jury to recall the evidence. Petitioner claims that the statement "ice that dog" was not supported by evidence and that the trial court erred in overruling his objection. The Missouri Court of Appeals found petitioner's claim without merit:

> A review of the record shows that on direct, prior to playing the audio recordings, Ladiner testified generally about his conversations with [petitioner]. Ladiner testified that [petitioner] had told him that he wanted to "ice" McBride, and he explained that "to ice him" meant to kill him. The State played a portion of the

13

recordings and then asked Ladiner about one statement which, after hearing the tape, Ladiner claimed was [petitioner] saying "it's like that." The State stated, "He didn't say, '[i]ce that dog?' " Ladiner replied, "That's not what he said."

> The State's argument was appropriate. Ladiner had answered on direct that [petitioner] told him that he wanted to "ice" McBride. Except for the one passage of the jail tapes about which the State pressed Ladiner, no other reference to "icing" the victim is heard on the tapes, however. Though Ladiner disagreed when directly questioned that a portion of one of the tapes included [petitioner] saying "[i]ce that dog," the jury could have believed otherwise. Directing the jury to listen to the tapes was appropriate, therefore, in light of Ladiner's specific testimony that Prince told him to "ice" McBride— a statement which would have been recorded on a jail tape. The State's argument was supported by the evidence, and the trial court did not abuse its discretion. This point is without merit.

(Resp. Ex. E, pages 16-17).

This court may grant petitioner federal habeas corpus relief only if "the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir.1999); *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000). The issue for federal habeas review is not whether the closing remarks were "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (prosecutor's reference to defendant as an "animal" held not a due process violation). The remarks must have made the entire trial fundamentally unfair. *Kellogg v. Skon*, 176 F.3d 447, 452 (8th Cir. 1999).

Because the prosecutor's argument had a basis in the evidence and because the jury could recall whether the evidence supported whether or not petitioner said, "ice that dog," the statements were not so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial. As such, Ground 4 will be denied under the standards set forth in Section 2254(d)(1) and (2).

14

## GROUND 5

In Ground 5, petitioner claims that the trial court plainly erred in admitting (1) the testimony of Ben White about petitioner's failure to speak about his case, (2) the audio recordings from the jail in which petitioner stated to family members that he could not discuss his case on the phone, and (3) argument by the state that petitioner's silence about his involvement in the murder in light of the phone calls with his family from the jail should be considered evidence of his guilt. Doc. No. 1, p. 11. Respondent contends that petitioner's claim is procedurally barred and that the Missouri Court of Appeal's review of the claim for plain error did not cure the default. Alternatively, respondent argues that Ground 5 is without merit.

Currently, there is a split within the Eighth Circuit with respect to plain error review and procedural bar. One line of cases stands for the proposition that "a properly limited plain error review by a state court does not cure a procedural default." *See, e.g., Toney v. Gammon*, 79 F.3d 693, 699 (8th Cir. 1996). Another line of cases holds that, when a state court conducts a plain error review, the federal courts may also review for plain error. *See, e.g., Hornbuckle v. Groose*, 106 F.3d 253, 257 (8th Cir. 1997), *cert. denied* 522 U.S. 873 (1997); *Sweet v. Delo*, 125 F.3d 1144, 1152 (8th Cir. 1997); *cert. denied*, 523 U.S. 1010 (1998).

The Eighth Circuit Court of Appeals, ruling en banc, has proclaimed that a panel may not choose among conflicting prior decisions but must follow the earliest decision. *Mader v. United States*, 654 F.3d 794, (2011) (en banc). In *Mader*, the court said "that when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.' *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006)."

The earliest decision made by the Eighth Circuit concluded that a habeas petitioner is not entitled to an independent determination by a federal habeas court after plain error review by a state court. *Hayes v. Lockhart*, 766 F.2d 1247, 1252-53 (8th Cir. 1985) (stating that because the burden of justifying federal habeas relief for state prisoners is greater than the plain error showing required on direct appeal, petitioner was not entitled to a determination by federal habeas court on whether the giving of a jury instruction was "plain error"). Therefore, Ground 5 is procedurally defaulted.

Alternatively, the Missouri Court of Appeals' decision that petitioner "fail[ed] to satisfy the first step of the plain error analysis" is reasonable and entitled to deference. Resp. Ex. E, p. 20. Specifically, the state appellate court found that *Miranda* does not apply to petitioner's situation in which he was recorded in a conversation with a third parties who were not involved in the crime and in which his statements were voluntary, spontaneous, and initiated by him. Respondent's Exhibit E, p. 19. As such, Ground 5 will be denied because the state court's finding is reasonable and entitled to deference under Section 2254 (d).

## GROUND 6

In Ground 6, petitioner claims the trial court abused its discretion by denying his motion for continuance to obtain police reports and investigate whether Ladiner was involved in a murder in California. Doc No. 1, p. 11. Petitioner argues that the state created the need for the continuance by its late disclosure of the California murder and of Ladiner's possible involvement. Doc. No. 1, p. 11. Petitioner argues that the continuance was necessary to establish co-defendant Ladiner's bias and willingness to lie. Doc. No. 1, p. 11. In considering the claim, the Missouri Court of Appeals concluded:

16

[Petitioner] claims that the State disclosed that Ladiner cooperated in a murder investigation in California and that the California authorities refused to send defense counsel any records. In his deposition, Ladiner denied any involvement in the murder and denied being an informant. [Petitioner] contends that the State's late disclosure of Ladiner's alleged involvement in a murder in California required a continuance and that without a continuance, the defense was left with Ladiner's self-serving assertions that he was not involved and did not snitch on his family to save himself.

[Petitioner] cites to a line of cases that are distinguishable in that all involve the State's late disclosure of witnesses or evidence *used at trial*. *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992) (Supreme Court held that a short delay was necessary for the defense to prepare to cross-examine the expert witness who was endorsed on the morning of trial, who linked the gun to the murder); *State v. Perkins*, 710 S.W.2d 889 (Mo.App. E.D.1986) (abuse of discretion in denying continuance to allow sufficient time to contact potential alibi witness where State disclosed written statement of defendant, which listed alibi witnesses, during voir dire; *State v. McIntosh*, 673 S.W.2d 53 (Mo.App. W.D.1984) (abuse of discretion in denying continuance due to late endorsement of witness on the day before trial whose testimony tended to refute or contradict defendant's version of events).

None of the cases cited by [petitioner] are controlling in this case. Here, the State did not call any witness from the California case, and there was no indication that any investigation of that case would have aided in [petitioner]'s defense. Although [petitioner] generally alleges that he was prejudiced by the State's late disclosure of the California case, he offers no indication of what *specific* prejudice resulted. [Petitioner] claims that the time to investigate the California matter was critical to see if evidence could be discovered that might demonstrate to the jury Ladiner's willingness to lie about his family in order to save himself. The argument is speculative and remote at best. There was sufficient other evidence before the jury which would have permitted the jury to question Ladiner's reliability as a witness, including his participation in the same crime for which [petitioner] was being tried. There is simply no basis to conclude that time to investigate a tangential criminal proceeding to see whether or not some angle could be developed to further implicate Ladiner's credibility would have been productive.

The trial court did not abuse its discretion in denying [petitioner]'s motion for continuance.

Resp. Ex. E, pages 21-22.

Federal habeas corpus courts afford broad discretion to state trial courts on matters of

continuances. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Only an unreasoning and arbitrary

17

insistence on speed in the face of a justifiable request for delay would provide grounds for reversal. *Cattoor v. Gammon*, 259 F.Supp.2d 929, 929 (E.D. Mo. 2003) (citing *United States v. West*, 878 F.2d 1111, 1112 (8th Cir. 1989)). After previously requesting and being granted multiple continuances, petitioner requested the continuance at issue a week before his trial began. Resp. Ex. B, pp. 66-68. Petitioner claimed he needed this continuance because he had only just learned of Ladiner's possible involvement with a murder in California, but the defense had asked Ladiner about the California murder nearly eight months before the trial. Resp. Ex. A, p. 117. The trial court had a hearing on the continuance, and petitioner was unable to prove that the denial of the continuance would be prejudicial.

The determination by the Missouri courts is reasonable and entitled to deference under §2254(d). As such, Ground 6 will be denied.

### GROUND 7

In Ground 7, petitioner claims that his trial counsel was ineffective for failing to investigate evidence related to petitioner's mental health for the purpose of mitigation during the penalty phase. Doc. No. 1, p. 11. Petitioner claims that, had trial counsel investigated petitioner's mental health, counsel would have been able to adduce evidence that petitioner suffered from several mental health disorders. Doc. No. 1, p. 11.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the

18

standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The Missouri Court of Appeals found that counsel's performance was not deficient for failing to investigate petitioner's potential mental health issues. The Missouri Court of Appeals dismissed ground 7 as follows:

> The motion court did not err in finding that counsel had no reason to consider further investigation of [petitioner]'s mental health, as the evidence supported a finding that [petitioner] failed to provide them with any specific information about his mental health and did not give the outward appearance of having any mental health issues. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* Both Byrne and O'Brien testified contrary to [petitioner]'s mother, indicating that she never provided them with any information from Branham, Dr. Scott, or [petitioner]'s Minnesota juvenile proceedings. Furthermore, Byrne indicated that, while there was brief mention of treatment and chemical dependency in the discovery materials he received from the State, he never knew of the psychological report presented at the evidentiary hearing, and he felt no need for independent evaluation because "in all [his] interactions with [petitioner], . . . [petitioner] never gave [him] cause to think that there were mental health issues." Byrne indicated that if he had any reason to believe that mental health issues were present, he would have pursued them if he believed they could have helped mitigate [petitioner]'s sentence. O'Brien supported Byrne's testimony. Based on this evidence, there was no reason for counsel to further investigate [petitioner]'s mental health. And because there was no reason provided, either directly by [petitioner] or indirectly

19

through his conduct, counsel's decision not to pursue this investigation was reasonable. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005); see also *Johnson v. State*, No. SC91787, 2012 WL 5921199, at *4 (Mo. banc Nov. 20, 2012); *Strong v. State*, 263 S.W.3d 636, 652 (Mo. banc 2008).

Resp. Ex. J, pages 10-11.

The record indicates that it is unlikely that counsel's failure to investigate petitioner's mental health was prejudicial. "Even if counsel had conducted further investigation, discovered all of the evidence that [petitioner] presented at the evidentiary hearing, and then presented that evidence to the jury during the penalty phase, it is not reasonably probable that the jury would have recommended a lesser sentence." Resp. Ex. J, p. 34. Further, the Missouri Court of Appeals reasoned that the evidence could have had an aggravating effect if presented, as "[t]he psychological report identified [petitioner] as manipulative, highly culpable, and in search of power and control." Resp. Ex. J, p. 35. The Supreme Court held that denial of a claim of ineffective assistance of counsel for failing to present mental health evidence during penalty phase was appropriate when the Court determined that, had the evidence at issue been presented, it would have opened the door to damaging evidence. *Darden v. Wainwright*, 477 U.S. 168, 186-87 (1986).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). Trial counsel's decision to abstain from investigating mental health issues when he was not given any indication that petitioner was suffering from mental health issues was well within the wide range of reasonable professional assistance. Because the state courts' determinations did not result in "a decision that was contrary to, or involved an

20

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2); Mo. Rev. State § 558.021(1)(3), Ground 7 will be denied.

## GROUND 8

In Ground 8, petitioner claims that his trial counsel was ineffective for failing to request a change of judge because the trial court had a familiarity with petitioner's grandfather.  Doc. No. 1, p. 12.  During sentencing, the trial judge stated that he knew and considered himself friends with petitioner's granddad.  Doc. No. 1, p. 12.  Petitioner claims that he was prejudiced because the trial court used its outside knowledge of petitioner's grandfather when sentencing petitioner.  Doc. No. 1, p. 12.  The Missouri Court of Appeals found:

> At the evidentiary hearing, trial counsel testified that he, [petitioner], and [petitioner]'s family had discussed the possibility of seeking a change of judge, but they opted not to do so because they did not want to risk drawing a different judge. Counsel testified that he did not believe he ever had cause to support a change of judge motion based upon bias or prejudice.  "Whether to file a motion to disqualify a judge is a matter of trial strategy."  *State v. Ayers*, 911 S.W.2d 648, 652 (Mo. App. S.D. 1995).  "Counsel is afforded broad latitude as to questions of trial strategy."  *State v. Hamilton*, 892 S.W.2d 774, 784 (Mo. App. S.D. 1995). "A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy."  *Id.*
>
> Furthermore, this was a strategy with which [petitioner] apparently agreed. Thus, he has no room to now complain that this strategy somehow failed.  *See State v. Collier*, 892 S.W.2d 686, 693-94 (Mo. App. W.D. 1994) (rejecting a claim of ineffective assistance of counsel for stipulating to certain evidence where defendant agreed with the decision to stipulate).

Resp. Ex. J, page 15.

21

Petitioner has not established that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Petitioner has not shown that his attorney's performance was deficient and that his deficient performance prejudiced his defense. *Id*. at 687. Because the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," habeas corpus relief on this ground will be denied. 28 U.S.C. § 2254(d).

## GROUND 9

In Ground 9, petitioner first claims that trial counsel was ineffective for failing to request a no-adverse-inference instruction during the penalty phase. Doc. No. 1, p. 12. A no-adverse-inference instruction would advise the jury not to draw an adverse inference from petitioner's decision not to testify. Resp. Ex. J, p. 16. Petitioner argues he was prejudiced because, had the jury been given this instruction, it "could have affected the outcome of the case." Doc. No. 1, p. 12; Resp. Ex. J, p. 16. Petitioner also includes in Ground 9 a claim that the post-conviction motion court erred in not granting him a change of judge and in adopting the state's proposed findings and conclusions verbatim. Doc. No. 1, p. 12.

In regard to the ineffective assistance of counsel claim for failure to request a no-adverse-inference instruction, the Missouri Court of Appeals found as follows:

> There are several problems with [petitioner]'s argument. First, counsel considered and rejected the possibility of requesting the no-adverse-inference instruction—a decision with which [petitioner] agreed. And second, [petitioner] has not alleged and cannot demonstrate prejudice from counsel's decision.

22

The Missouri Supreme Court "has recognized that submission of the no-adverse inference instruction is optional." *Barnett v. State*, 103 S.W.3d 765, 773 (Mo. banc 2003) (citing MAI-CR 3d 308.14, Notes on Use 2; and *Knese v. State*, 85 S.W.3d 628, 635 (Mo. banc 2002), as "holding that it is reasonable for counsel to forego requesting the instruction, believing that it highlights the fact that the defendant did not testify"). "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo. App. S.D. 2011) (quoting *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984)).

Here, counsel's decision not to submit the instruction in the penalty phase was plainly a matter of trial strategy. Counsel testified at the evidentiary hearing that he typically chooses not to request the no-adverse-inference instruction because "it was perceived that it highlighted the failure to testify." The record from the trial, itself, reflects that [petitioner] was advised of his option to request the instruction, but he chose not to have it—at either the guilt or the penalty phase.

As counsel suggested, "[t]he 'no-adverse inference' instruction can serve to call the jury's attention to the defendant's decision not to testify, which can, by itself, result in a negative inference directed towards the defendant." *Christeson v. State*, 131 S.W.3d 796, 800-01 (Mo. banc 2004). Consequently, counsel's decision not to request the instruction is a matter of reasonable trial strategy. *See State v. Naumowicz*, 923 S.W.2d 482, 487 (Mo. App. E.D. 1996).

[Petitioner] has failed to demonstrate not only deficient performance but also resulting prejudice in that "[t]he omission of this optional instruction fails to establish prejudice cognizable by *Strickland*." *Barnett*, 103 S.W.3d at 773.

Because he failed to prove either deficient performance or resulting prejudice, [petitioner]'s claim of ineffective assistance of counsel is without merit.

(Resp. Ex. J, pages 16-17)

Here, the Missouri Court of Appeals upheld the motion court's finding that petitioner's trial counsel made a reasonable decision to not submit a no-adverse-inference instruction to the jury. Such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. *Strickland*, 466 U.S. at 690-91; *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *see also Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears

23

at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

Because the state court's determinations were not based upon "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* U.S.C. § 2254(d)(1) and (2); Mo. Rev. Stat. § 558.021(1)(3), petitioner's claim of ineffective assistance of counsel with respect to his attorney's failure to submit a no-adverse-inference instruction to the jury will be denied.

Petitioner's next claim that the post-conviction motion court erred in denying his motion for a change of judge and adopting the state's proposed findings of fact and conclusions of law is not cognizable in federal habeas corpus review. These claims are collateral to petitioner's conviction and do not entitle him to federal habeas corpus relief. Federal habeas courts are only authorized to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. *Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir. 1984) (alleged denial of effective assistance of counsel at Rule 27.26 hearing is not cognizable under § 2254). "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990).

## A CERTIFICATE OF APPEALABILITY WILL BE DENIED

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where

a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.


          /s/ Howard F. Sachs_____
         HOWARD F. SACHS
         UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: October 2, 2014.